## WILSON v. SCHAEFER.

### (*Jackson.*    June 15, 1901.)

1. BILL OF REVIEW.  *Remainderman barred, when.*

   A remainderman's right to prosecute bill of review to reverse a decree affecting his interest in realty is barred unless he proceeds within three years after date of decree, or, in case of his disability, within three years after its removal, notwithstanding the existence and continuance of the life estate· (*Post, pp. 319–321.*)

   Code construed: §§ 4477, 4848 (S.); §§ 3477, 3478 (M. & V.); §§ 2780, 2781 (T. & S.).

   Cases cited: Aiken v. Suttle, 4 Lea, 103; Winchester v. Winchester, 1 Head, 460.

2. SAME.  *Maintainable by persons not in esse at date of decree.*

   Persons not *in esse* at date of decree, but whose interests were before the Court by virtual representation, and are precluded by the decree, are not debarred a bill of review to reverse the decree by reason of not having been parties to the original cause.  (*Post, pp. 321, 322.*)

3. SAME.  *For error apparent, maintainable when.*

   A bill of review for error apparent cannot be maintained unless the decree complained of is contrary to some statutory enactment, or in violation of some settled and recognized principle or rule of equity, or at variance with the forms or practice of the Court.  It cannot be maintained for merely formal irregularities, or by a party who is not prejudiced by the decree. (*Post, p. 322.*)

   Cases cited: Railroad v. Rainey, 7 Cold., 420; Livingston v. Noe, 1 Lea, 55; Montgomery v. Olwell, 1 Tenn. Ch., 169.

4. SAME.  *Same.*

   To ascertain the existence of error apparent, it is competent to look back of the decree to the pleadings, orders, and reports of Master, but not to the evidence.  The propriety of the

Wilson *v.* Schaefer.

decree upon the evidence cannot be inquired into. (*Post,. pp. 322, 323.*)

Cases cited: Winchester *v.* Winchester, 1 Head, 460; Fuller *v.* McFarland, 6 Heis., 79; Livingston *v.* Noe, 1 Lea, 55; Ward *v.* Kent, 6 Lea, 128; Rodgers *v.* Dibrell, 6 Lea, 69; Drake *v.* Drake, 12 Heis., 704; Anderson *v.* Bank, 5 Sneed, 661; Berdanatti *v.* Sexton, 2 Tenn. Ch., 699.

5. SAME. *For new matter, essentials of.*

New matter for which a bill of review is maintainable, must be relevant and material, bearing directly on the merits of the case and affecting the very foundation of the decree, and must be such as would probably have changed the result had it been brought forward, and must have been unknown to the complainant or his attorney, and not discoverable by them by the exercise of due diligence, until it was too late to use it in the suit. (*Post, pp. 323, 324.*)

Cases cited: Puryear *v.* Puryear, 5 Bax., 640; Cleveland *v.* Martin, 2 Head, 128: Winchester *v.* Winchester, 1 Head, 460; Long *v.* Granberry, 2 Tenn. Ch., 85.

6. SAME. *Same.*

And the new matter must be so stated in the bill of review, that the Court may, upon demurrer, determine its character, and not be left to judge of its sufficiency upon consideration of the additional testimony in connection with the evidence in the original cause. (*Post, pp. 323, 324.*)

Cases cited: Clark *v.* Garrett, 6 Lea, 262; Livingston *v.* Noe, 1 Lea, 55; Burson *v.* Dosser, 1 Heis., 761.

7. SAME. *Joinder of, with bill to impeach decree for fraud.*

The joinder of a bill of review with an original bill impeaching a decree for fraud is not in consonance with the practice in courts of equity, and leads to great confusion. The two classes of bills are radically different in their objects and effects. (*Post, pp. 324, 325.*)

8. DECREE. *Coram non judice.*

A decree, outside the scope of the pleadings, is *coram non judice*, are void; but this rule does not extend to consent decrees rendered in causes where the Court had jurisdiction of the parties and of the subject-matter. (*Post, pp. 327, 328.*)

Cases cited: Bank *v.* Carpenter, 97 Tenn., 437; Randolph *v.* Bank, 9 Lea, 63; Rogers *v.* Breen, 9 Heis., 679; Easley *v.* Tarkington,

Wilson *v.* Schaefer.

5 Bax., 592; Bigley *v.* Watson, 98 Tenn., 353; Boyce *v.* Stanton, 15 Lea., 347.

9. SAME. *Same.*

A decree is not void, even if it is erroneous, and reversible on appeal or writ of error, where the Court has jurisdiction of the subject-matter and of the parties, whether the jurisdiction is inherent or statutory. (*Post pp. 331, 332.*)

Cases cited: Hurt *v.* Long, 90 Tenn., 445; Kelley *v.* Kelley, 15 Lea, 198; Livingston *v.* Noe, 1 Lea, 55; Fulton *v.* Davidson, 3 Heis., 614; McGavock *v.* Bell, 3 Cold., 512; Hopper *v.* Fisher, 2 Head, 252; Winchester *v.* Winchester, 1 Head, 500.

10. SAME. *Conclusive upon infants.*

Infants are concluded to the same extent as adult parties by decree of the Chancery Court, and are entitled to the same proceedings for correction of errors therein, and to none other. (*Post, pp. 330, 331.*)

Case cited: Hurt *v.* Long, 90 Tenn., 445.

11. SAME. *By consent binds infant, when.*

A consent decree binds an infant, which is made by compromise with his next friend, under the approval and ratification of the Court, in a cause to which he is a party, and of the subject-matter and parties to which the Court has jurisdiction, although his guardian and counsel may not have assented to same. (*Post, pp. 332–336.*)

12. SAME. *For exchange of infant's lands not void.*

A decree for the exchange of infant's lands in this State for lands situated in another State, rendered in a proper proceeding for the conversion of the infant's lands situated in this State, is not void, though it might be deemed erroneous on appeal or writ of error. (*Post, p. 336.*)

---

FROM　SHELBY.

---

Appeal from Chancery Court of Shelby County.

F. H. HEISKELL, J.

P. W. McBETH and GILLHAM & GILLHAM for Wilson.

McFARLAND & NEBLETT, THOMAS M. SCRUGGS, and METCALF & METCALF for Schafer.

McALISTER, J.    This bill was filed on June 28, 1900, as a bill of review to set aside a decree pronounced by the Chancery Court of Shelby County on March 11, 1874, for error apparent on the face of the decree and for newly discovered evidence. It is also filed as a bill in the nature of a bill of review and as an original bill seeking to impeach said decree for fraud. The bill was filed by remaindermen under the will of W. C. Bradford, deceased, who claim that the life estate in certain valuable realty in the city of Memphis terminated in 1891, when they became entitled to possession, but that they are wrongfully kept out of possession by the defendants, who claim title by virtue of a compromise decree rendered in 1874. It is charged that complainants were under disability when their rights accrued, and that this disability still exists. It is alleged that said compromise decree is void, for the reason that the Court had no jurisdiction of the parties; that said decree was not warranted by the pleadings; that the Court had no jurisdiction to exchange real estate of minors situated in Tennessee for real estate located in Illinois, and, finally, it is charged that said decree was fraudulently obtained.

Demurrers were interposed to this bill by the several defendants. The Chancellor, while adjudging several of the demurrers good, sustained the bill on the ground that the compromise decree of 1874 was not within the scope of the pleadings, *coram non judice*, and void. The Chancellor, in the exercise of the discretion given him by the statute, permitted each party to appeal. Defendants perfected their appeals, and complainants have brought the case to this Court by writ of error.

It is necessary, in order to present the issues in controversy, that a more ·specific statement of the case, as made in the bill and exhibits, be outlined. The several pieces of property in controversy are now owned ˙ by the Livermore Foundry Company, Mary E. Coover, Lawrence B. Coover, and B. G. Henning, who are the real defendants to the bill. It is charged in the bill that one Wat C. Bradford, a citizen of Memphis, Tennessee, died in Tennessee in 1864, owning the real estate involved in this litigation, situated in Memphis, Tennessee. He left a will, which was probated in Shelby County, Tennessee, in 1864, by which he devised all his property to his widow, Catherine A. Bradford, "in trust, that she may enjoy and hold the same, with its emoluments and profits, for and during the term of her natural life, for the support and maintenance of herself and family, and the remainder and reversion thereof to my daughter, Mary Knapp, wife of —— Knapp, and her children, then living or thereafter

to be born, free from the debts, contracts, or engagements of her present or any future husband. My wife, if she desires, may, at any time, set apart and deliver to my said daughter, Mary Knapp, any portion of said property, real or personal, to be held by her," etc. The will also directs the executors to pay debts "out of any moneys now on hand, or to be realized hereafter from collections or from the sale of real or personal property, which they are hereby authorized to make for that purpose."

William Chase and J. M. Provine were named as executors of the will. Provine declined to qualify, and Chase, with the widow, Catherine A., qualified as executors, and acted as such until March, 1867, at which time Chase settled his accounts in the probate Court and resigned. The widow had married Dr. H. Schaefer shortly before Chase's resignation, and thereafter continued as administratrix with the will annexed.

It is alleged that on August 10, 1867, Catherine A. Schaefer, administratrix of the estate of Wat C. Bradford, and H. Schaefer, and Mary C. Knapp executed to Reuben Jones, of Baltimore, Md., a deed for the recited consideration of $5,000, purporting to convey to Jones a certain lot in the city of Memphis, fronting on the east side of Town Reserve street, or Brinkley avenue, 230 feet, and running back between parallel lines 218 feet and 9 inches, it being the homestead lot on which Brad-

23 p—20

ford. lived at the time of his death, and now owned by the defendant, Henning.

It is further alleged that on August 15, 1867, the same parties conveyed to the said Reuben Jones, for the expressed consideration of $25,000, another lot in the city of Memphis, situated on Adams and Washington streets. The part of said lot fronting on Washington street is claimed by the Coover estate, while that part fronting on Adams street is now owned by the Livermore Foundry. It should be remarked in this connection that in the settlement filed by the executrix, Catherine A. Schaefer, she accounted for the sum of $30,000, purchase money for the lots aforesaid, as having been collected on August 15, 1867, from one Jones.

It is charged in the bill that these conveyances were fraudulent, and were made to Reuben Jones, who was a brother to Mrs. Schaefer, without his knowledge or consent; that he never heard of the conveyances until a year or two after their execution; that he never saw the property, and paid no part of the purported consideration. It is then charged that said conveyances were the result of a fraudulent scheme on the part of Dr. Schaefer to defeat the remainder estate of the children of Mrs. Knapp in said property, and to realize for himself the proceeds of the sales.

It is conceded in the bill that both Mrs. Schaefer and her daughter were innocent in the matter, and were induced to join in the conveyances through the

fraud, misrepresentations, and undue influence of Dr. Schaefer. It is further alleged that the property in question remained in this state of title until the year 1870, when Dr. Schaefer negotiated an exchange of it with Adam Smith, of the State of Illinois, for property situated in that State; and thereupon Schaefer and wife applied to Jones to convey the Memphis property to Smith. It is claimed that this is the first knowledge Jones received that the Memphis property had been conveyed to him. Jones objected to the transaction, and refused, upon the advice of his counsel, to execute a warranty deed. Afterwards he reluctantly executed quitclaim deeds to the property to Smith, on the 26th October, 1871.

It was further shown that shortly after the execution of the deeds from Schaefer and wife and Mrs. Knapp to Reuben Jones, Schaefer moved the family, including Mrs. Knapp and children, from Memphis to Illinois, where they have since resided.

Mrs. Knapp, about April, 1871, intermarried with David Burnham. Mrs. Knapp had four children by her first husband, three of whom are now living, and are parties to the present suit—namely, Catherine B. Wilson, Elizabeth G. Dunham, and Mamie F. Hungerford. Wat C. Knapp, son of Mary Knapp, died intestate, and his son and sole heir, Dillis C. Knapp, a minor, is also complainant. Mrs. Burnham (Mary C. Knapp) has one child, John D. Burnham, by her second marriage.

It is further alleged that on September 11, 1871, a bill was filed in the Chancery Court of Shelby County styled Reuben Jones *v.* H. Schaefer, Catherine A. Schaefer, Mary C. Burnham, David Burnham (her husband), Mary Knapp, Kate Knapp, Lizzie Knapp, and Will C. Knapp, alleging the execution of the deeds from Schaefer to Jones; that said deeds were intended as an execution of the power of sale given by the will of Wat. C. Bradford, deceased, to pay the debts of the estate, but that they failed to make proper recital in the first deeds; that they subsequently executed another deed to him, reciting the facts above stated, and quoting from the will the powers given to such executors, which they sought to have approved and confirmed by the Court as a valid execution of the power. It is stated that this deed was filed with the bill, but never recorded. It appears that publication was made for all the defendants to this bill, including the minors, and on November 1, 1871, T. B. Turley was appointed by the Court *guardian ad litem* for the minor defendants, May, Kate, Lizzie and Wat. C. Knapp. On May 4, 1872, these minors, by their said guardian *ad litem*, filed an answer to this bill. On April 15, 1873, David Burnham and wife, Mary C. Burnham, filed an answer for themselves, and a cross-bill for themselves and as next friend of Mary, Kate, Lizzie and Wat. C. Knapp, against Reuben Jones, H. and Catherine Schaefer and Adam Smith. They set up in this cross-bill

Wilson *v.* Schaefer.

that Mary C. Knapp, now Burnham, was persuaded to join in the deeds executed to Jones, and previously set out herein, by the fraudulent representations of Jones and H. Schaefer, and that Jones had conveyed to Adam Smith by the false representations to Jones, and asked in the cross-bill that the Court construe the will of Wat. C. Bradford, and set aside all the deeds made to Jones and by Jones to Smith, and for the recovery of the real estate so conveyed.

Afterwards, on May 21, 1873, David Burnham and his wife, Mary, in their own behalf and as next friend to Mary, Kate, Lizzie, and Wat. C. Knapp, the minor children of Mary C., filed their original bill against Adam Smith, attacking the conveyances made to him, as the product of fraud and collusion between him and Schaefer, and seeking to have them all set aside and canceled. The bill charges that Smith had notice of all the circumstances under which Jones held the property. It is charged that no process was issued under the answer and cross-bill of Burnham and wife, filed in *Jones* v. *Schaefer*, nor did any process issue in Burnham and wife against Smith. It is further charged that no appearance was made nor answer filed by any one, either in the cross-bill or original bill filed by Burnham and wife. It appears that on October 4, 1873, the deposition of Reuben Jones, taken in the case of *Elliott* v. *Hanson*, then pending in the Chancery Court of Shelby County, was filed in *Jones* v. *Schaefer*, under an agreement that it might be used as evi-

dence, wherein it was disclosed that Jones had never purchased the property or paid anything for it, and that he had conveyed it by quit-claim deeds, in 1870, to Smith, and that the bill of *Smith* v. *Jones* was filed without his knowledge or consent; that it was a fraud on him and a fraud on the Court.

It further appears that on November 19, 1873, Reuben Jones filed his answer to the cross-bill of Mary C. Burnham in the first cause of *Jones* v. *Schaefer*, in which he entered a disclaimer of the original bill, and asked that he be dismissed from that proceeding.

On February 20, 1874, an order was entered in the two causes of *Jones* v. *Schaefer* and *Burnham* v. *Smith*, substituting Adam Smith as the complainant in the first cause in the place of Reuben Jones, reciting in said decree that Smith had purchased the legal title to the property mentioned in the bill, and is now claiming title thereunder, and upon his prayer to be allowed to become complainant in the name and stead of Reuben Jones, so as to have the questions in the said suit determined without the delay and expense of a new suit, it was decreed, viz.: "And it appearing to the Court, from the pleadings and proof, that it is to the interest of the minors to have the matters now presented in said record finally and promptly disposed of, and the adult parties consenting thereto, upon the application of Adam Smith, the Court doth order that

the cause stand in the name of Adam Smith, and that the same be dismissed so far as Reuben Jones is concerned, but that the cause be retained in this Court, with all the pleadings, and proofs, and orders, as though Adam Smith were complainant, and that the petition heretofore filed in this cause stand as though filed in the case of *David Burnham et al.* v. *Adam Smith,* and *that all matters involved in said petition and in said two causes be consolidated and heard with the case of David Burnham, and that Mr. T. B. Turley, guardian ad litem, appointed in the case of Reuben Jones, continue to represent and defend the interests of said minors in all matters involved in the two causes and in the petition referred to.*"

The petition referred to in the foregoing decree was filed in the Jones case on February 9, 1874, in the name of David Burnham and Mary C. Burnham, his wife, and Kate, Lizzie, Mary, and Wat. C. Knapp, minors, suing by David and Mary Burnham as their next friends, in which it is recited that petitioners and Adam Smith had been trying to settle and compromise this litigation and they had finally agreed to a settlement, which they asked the Court to confirm.

The petition set forth the following, among other reasons, to show that said settlement should be ratified: It was stated that one W. Y. Elliott had filed his bill to sell the property of Wat. C. Bradford to satisfy a judgment against his estate for

$5,000, and that it would be necessary to sell land to pay that debt; that Adam Smith claimed he was an innocent purchaser of the property for a valuable consideration, notwithstanding Jones had paid nothing for the property. It was further stated that the legal rights of the parties are doubtful, and that it may be that Adam Smith has acquired a good and legal title to said property. The petition further stated that it is manifestly to the interest of the minor heirs to make such settlement, even if Adam Smith's title be ultimately held void; that the minors are without means to keep said property in repair and pay the taxes; that petitioners cannot get possession of their remainder interest in said realty until the death of Mrs. Schaefer, who is now about fifty years of age and very healthy, with a life expectancy of twenty-one years; that Smith certainly acquired, under her deed, the life estate of Mrs. Schaefer, and petitioners will get nothing from said estate until the death of Mrs. Schaefer, and they would then be left to grow up without the support, maintenance, and education which, at their tender ages, they so much need. It was further stated that the property in Illinois for which the Memphis property is to be exchanged under said compromise and settlment is of greater value than the Memphis property, and they will come at once into its possession. Many other reasons are stated in the petition to show that this compro-

mise settlement is manifestly to the interest of the minor heirs.

On February 19, 1874, a reference was made to the Clerk to report the value of the Memphis property, and to show the value of the interest of the minor children of Mary Knapp in the same after the life estate of Mrs. Schaefer, and to report whether it would be to the interest of the minors to make the compromise stipulated in the agreement. Said report to be made within ten days, unless otherwise ordered by the Court.

On February 20, 1874, in *Jones* v. *Schaefer*, the following order was entered: "In this cause T. B. Turley, the guardian *ad litem*, having this day come into Court and objected to the petition asking for a compromise, filed herein February 19, 1874, standing or being made in the names of the minor defendants, Mary Knapp, Kate Knapp, Lizzie Knapp, and Wat. C. Knapp, it is ordered by the Court that their names be stricken out, and the petition stand as the petition of David and Mary Burnham, and the order of reference made herein, on February 19, 1874, be corrected so as to show that the reference is made on the petition of David and Mary Burnham."

Proof was taken on the order of reference touching the title and value of the property, both in Tennessee and Illinois, which was proposed to be exchanged, and the advisability of carrying out the compromise agreement.

On March 2, 1874, the Clerk and Master filed his report, in which he stated that Adam Smith had acquired the life estate of Mrs. Schaefer in the Memphis property, and likewise the interest of Mary C. Burnham, who was one of the remaindermen, leaving only outstanding the remainder interest of the Burnham children; that the value of the Memphis property was $31,700; that the property is encumbered by a judgment in favor of W. Y. Elliott for about $5,000, and also a considerable amount of delinquent taxes; that Adam Smith proposes to pay in cash $1,500 and $1,468 back taxes; to pay the judgment of Elliott for $5,000, to surrender to Mrs. Burnham a rent note of Cubbins & Gunn for $1,000, and to vest in the minors a present fee simple title to valuable lands in Illinois, having an actual income of $2,000 per annum, free from incumbrance, for the support and education of the children, and also a lot in Memphis worth $2,500. The Master unhesitatingly reports that it would be to the interest of the minors that the exchange proposed be confirmed by the Court. The Clerk further reports that all of the Memphis property was subject to the life estate of Mrs. Schaefer, and that the life expectancy of Mrs. Schaefer was twenty-one years.

On March 11, 1874, there was a decree in the consolidated causes confirming the report of the Master, viz.: "Be it remembered that these consolidated causes came on to be heard before the Hon. S. P.

Walker, Chancellor, etc., on March 11, 1874, upon the petition of David Burnham and wife, filed herein on February 19, 1874, and the exhibits thereto and the proof taken thereon, for the purpose of the reference to the Clerk and Master and for the use of the Court, and upon the report of the Clerk and Master, filed herein on March 2, 1874, which is in the words and figures following: (here insert report). And upon all the pleadings and upon all the proof already in said causes, including Wat. Bradford's will, and upon the record in the case of *Elliott* v. *Hanson et al.*, No. ——, R. D., First Chancery Court, and upon the argument of counsel for the adult parties, and of guardian *ad litem* for the minor defendants and complainants herein, in which argument, among other things, the guardian *ad litem*, T. B. Turley, called the special attention of the Court to the fact that, upon the proof elicited, he claimed for minor defendants an immediate interest in the Memphis real estate under the third item of Wat. Bradford's will, and also called the Court's attention to the various reasons and facts in the proof, which he considered as repudiating the idea that Adam Smith was an innocent purchaser of the Memphis property, and all the exhibits having been properly proved as required by law, and the Court having made itself personally familiar with all the pleadings, exhibits, and proof and records above mentioned, and having carefully and deliberately weighed and considered them, and

from all of which it appears to the satisfaction of the Court that the agreement or compromise made· and entered into on February 11, 1874, by and between the adult parties to the suit of David Burnham *v.* Adam Smith, and H. Schaefer and wife, which, in the words and figures following (here insert agreement marked Exhibit C.*q.*), is manifestly to the interest and advantage of the minor parties hereto, for the reasons set forth in the petition and sustained by proof, and referred to in report of the Clerk and Master, wherefore the Court doth order and decree that said agreement or compromise be and the same are hereby in all things confirmed, so far as the same is necessary to bind the interests of said minors.

"And the Court doth further order, adjudge, and decree that, upon the execution by the said Smith of the necessary deeds to said Mary C. Burnham and her children, as tenants in common, as provided for in said agreement, and upon his satisfying the Court as to the title to the Illinois property, and upon his complying with the other requirements of said agreement on his part to be done and performed, that a decree be had and entered in these consolidated causes divesting all the right, title, and interest of all the parties herein in and to the property embraced in the deeds from Reuben Jones to Adam Smith, except the south forty-five feet of the Manassas street property; out of them, and vesting the same in Adam Smith, his heirs and assigns,

forever. The Court doth further order that the
cash to be paid by said Smith be paid into Court,
to be drawn out by the regular guardian of said
minors, upon his giving bond as required by law,
after paying the cost of the guardian *ad litem*
herein and such of the Court costs as are found to
be due by them, the Court costs in both causes
being hereby ordered to be equally divided between
the complainants and defendant in said cause of
David Burnham *et al v.* Adam Smith.

"It is ordered, further, that these causes, includ-
ing the pleadings, decrees, orders, petitions, and ex-
hibits, and all the proof taken in these causes, be
enrolled. The cause is retained for such further
orders as may be deemed necessary, and the Court
reserves the right to rescind this compromise should
said Smith fail to comply within a reasonable time."

On April 6, 1874, the Court ordered a reference
for further proof touching the title to one of the
pieces of property, and, further proof being taken
on that point and the defect having been remedied,
there was a final decree on April 17, 1874, in the
consolidated causes, divesting title out of the minors
therein being, and also of any children thereafter to
be born, in and to the Memphis property, and
vesting the same in Adam Smith.

Since this decree was made four other children
have been born to Mrs. Burnham by her second
marriage. The complainants are the children of
Mary C. Knapp, by her two marriages, together

with the husbands of such as are married, and the representatives of such as have died. Catherine A. Schaefer died intestate February 12, 1891, and Mary C. Burnham died testate August 29, 1894, devising her property to her husband for life, with the remainder to her children. Complaintant Catherine B. Knapp was born May 3, 1858, married Robert Wilson March 27, 1879. Elizabeth G. Knapp, born December 27, 1860, married John C. Burnham June 25, 1879. Mamie F. Knapp, born September 6, 1862, married Everett M. Hungerford November 10, 1879. Wat. C. Knapp, born September 16, 1864, died intestate February 18, 1891, at which time he was insane, and had been in that condition since prior to February 1, 1891. He left one child surviving him, Dillis C. Knapp, who is a minor, and sues by his next friend; also a widow, Kate W. Knapp, who is now the wife of James S. Bushnell. John C. Burnham, born December 21, 1872. Edward L. Burnham, born May 6, 1875, died intestate and without issue October 26, 1898. Ruth May Burnham, born May 31, 1877, married Everett D. Cone, August 16, 1899. Roy Burnham, born June 27, 1879. Ivy Burnham, born June 27, 1881, died July 9, 1893, intestate and without issue.

Complainants Catherine B. Wilson, Elizabeth G. Dunham, Mamie M. Hungerford and Ruth M. Cone have been all the time married women, living with their husbands from the dates respectively of their marriages. The bill charges that none of the com-

plainants are barred by reason of disabilities from prosecuting this action.

Complainant assigns as error:

1. The action of the Chancellor in sustaining defendant's first demurrer, and decreeing that complainants, excepting Ruth M. Cone and Roy Burnham, could not maintain this bill as a bill of review for errors apparent, upon the ground that their action was not instituted within three years from the time they attained their majority.

It is insisted that none of the complainants are barred from maintaining this suit as a bill of review. In this connection may be considered defendant's assignment of errors on this subject, which is that the Chancellor erred in not holding that Ruth M. Cone and her husband, Everett D. Cone, and Roy Burnham were likewise barred with the other complainants.

Our statute (Shannon's Code, Sec. 4848; Acts of 1801, Ch. 6, Sec. 53) provides that: "No bill of review shall be brought, or a motion made therefor, except within three years from the time of the pronouncing of the decree, saving to infants, married women, persons of unsound mind, imprisoned, or beyond the limits of the United States a right to a bill of review within three years after such disability has been removed."

It is insisted by complainants' counsel that, under Section 4477, Shannon's Code, one of the general provisions as to limitations, that the limitation begins

to run from the accrual of the right, and not from the date of the decree. The argument is then made that complainants had no right of action until February 12, 1891, when the life tenant, Mrs. Schaefer, died, but that, at that date, Mrs. Wilson, Mrs. Durham, and Mrs. Hungerford were married, and have continued under said disability of coverture until the present time.

If this were a possessory action for the recovery of the property, the argument might be sound, for, of course, remaindermen have no right to possession until the falling in of the life estate. But this is a bill of review to set aside the compromise decree of 1874, and, under the statute, it is required to be filed within three years from the decree, saving to infants, married women, etc., a right to a bill of review within three years from the removal of such disability. Mrs. Catherine Wilson, Mrs. Elizabeth Dunham, and Mrs. Mary Hungerford, daughters of Mary Knapp, were, at the date of the decree, laboring under the disability of nonage, but attained their majority in 1879, 1881, and 1883, respectively. It was their right to file a bill of review within three years from the removing of the disability of nonage, but the bill was not filed by them until June 28, 1900. The fact that they are now laboring under the cumulative disability of coverture, and were under said disability in 1891, when the life estate of Mrs. Schaefer terminated, is of no importance. A remainder is a present right, though the

Wilson *v.* Schaefer.

enjoyment is *in futuro*, and the owner may desire to dispose of it, or in some way make it available to his needs, and, hence, is entitled to have it relieved from a cloud impairing its value, and, perhaps, rendering it wholly unavailable. *Aiken* v. *Suttle*, 4 Lea, 103. Parties need not wait until the removal of disabilities before filing a bill of review. *Winchester* v. *Winchester*, 1 Head, 460.

It also appears that Wat. C. Knapp attained his majority more than three years before the bill was filed, and died. It follows that his son, Dillis C. Knapp, one of the present complainants, was, also, barred. So, also, John C. Burnham and Edward L. Burnham were of age more than three years before the bill was filed. Edward L., having died after the bar became complete, left no inheritable interest.

Ruth M. Burnham, who intermarried with Everett D. Cone, did not attain her majority until May 31, 1898, and Roy Burnham became of age June 27, 1900, the day preceding the filing of this bill. The two parties last mentioned are, therefore, not barred; but it is said that Ruth Cone and Roy Burnham are not entitled to maintain a bill of review, for the reason they were not parties to the compromise decree of 1874. Gibson's Suits in Chancery, Sec. 1059; *Arnold* v. *Moyer*, 1 Lea, 310.

They were not parties, for the obvious reason they were not *in esse* when that decree was pronounced, but they were represented by members of a class to which they belonged and hence were

23 P—21

bound by the decree. Their right to a bill of review is not affected by the statute of limitations.

The complainant also assigns as error the action of the Chancellor in sustaining defendant's second demurrer and holding that the bill could not be maintained, as a bill of review for error apparent, for newly discovered evidence, or. for fraud. The authorities are: "In order to sustain a bill of review for error apparent, the decree complained of must be contrary to some statutory enactment (2 Dan. Chy. Pr., 6 Am. Ed., 1576; Story Eq. Pl., Sec. 405; *Freeman* v. *Clay*, 52 Fed. Rep., 1; *Hoffman* v. *Knox*, 50 Fed. Rep., 484); or some principle or rule of equity recognized and acknowledged as settled by decision, or be at variance with the forms and practice of the Court. (2 Dan. Chy. Pr., 6 Am. Ed., 1576.) Errors apparent cannot be predicated of merely formal irregularities (*Berdanatti* v. *Sexton*, 2 Tenn. Chy., 699; *Hargraves* v. *Lewis*, 7 Ga., 110; *Gary* v. *May*, 16 O., 66). Nor of matters resting in discretion (*Ashford* v. *Patton*, 70 Ala., 479; *Clark* v. *Clark*, 4 Haywood, 36). Nor can a bill of review be maintained by one who is not prejudiced by the decree complained of (*LaGrange R. R. Co.* v. *Rainey*, 7 Cold., 420; *Livingston* v. *Noe*, 1 Lea, 55, and *Montgomery* v. *Olwell*, 1 Tenn. Chy., 169).

"In order to ascertain if there be error in the decree the general practice is to look back of the decree into the whole record of the pleadings and

proceedings, including orders and Masters' reports, but excluding evidence. Matters of fact cannot be inquired into on a bill of review for error apparent. A party cannot contest the propriety of a decree on the ground that it was not justified by the evidence." *Enochs* v. *Haralson*, 57 Miss., 465; *Winchester* v. *Winchester*, 1 Head, 460; *Fuller* v. *McFarland*, 6 Heis., 79; *Livingston* v. *Noe*, 1 Lea, 55; *Ward* v. *Kent*, 6 Lea, 128; *Rodgers* v. *Dibrell*, 6 Lea, 69; *Berdanatti* v. *Sexton*, 2 Tenn. Chy., 699; *Drake* v. *Drake*, 12 Heis., 704; *Anderson* v. *Tenn. Bank*, 5 Sneed, 661.

"As to newly discovered matter, in order to sustain a bill of review it must be relevant and material, such as would probably have changed the result had it been brought forward, and which was not known to the plaintiff or his attorney, and could not have been known by them by the use of reasonable diligence, in time to be used in the suit." *Puryear* v. *Puryear*, 5 Bax., 640.

In *Jenkins* v. *Eldredge*, 3 Story (U. S.), 311, Judge Story says: "It must be evidence bearing directly on the merits of the case and affecting the very foundation of the decree."

"And it must not have been known to the plaintiff or his attorney in time to be used in the suit." *Long* v. *Granberry*, 2 Tenn. Chy., 85; *Cleveland* v. *Martin*, 2 Head, 128; *Winchester* v. *Winchester*, 1 Head, 460.

"The new matter upon which the bill is founded must be so stated that the Court, upon demurrer, may determine its character and not be left to judge of its sufficiency upon consideration of the additional testimony in connection with the evidence in the original cause." *Greer* v. *Turner*, 47 Ark., 29; *Clark* v. *Garrett*, 6 Lea, 262; *Livingston* v. *Noe*, 1 Lea, 55; *Burson* v. *Dosser*, 1 Heis., 761, citing *Long* v. *Granberry* (by Chancellor Cooper), 2 Tenn. Chy., 86.

"And such a bill to impeach a decree for fraud, termed generally an original bill in the nature of a bill of review, partaking of the character of both classes of bills, is, in its essential features, an original and independent proceeding." *Haskins* v. *Rowe*, 2 Lea, 708.

"But, of course, it is unimportant what the bill is called (*Maddox* v. *Apperson*, 14 Lea, 598), and the terms, 'original bill' and 'bill of review,' are frequently in this sense used interchangeably." *Terry* v. *Commercial Bank*, 92 U. S., 454.

The difference between a bill of review and a bill to impeach for fraud, the bill now under discussion partaking of the nature of both, is well set out in the case of *Berdanatti* v. *Sexton*, 2 Tenn. Chy., 704, where the Court says: "The object and effect of a bill for fraud, even if the fraud consists of want of notice, are to vacate the former decree, not to retry the case; whereas, the object and effect of a bill of review are to reverse the

Wilson *v.* Schaefer.

decree, so far as it is erroneous, and to retry the case upon the original record, or the original record and new proof, as the bill is for error apparent or newly discovered evidence.''

Again, in *Berdanatti* v. *Sexton*, 2 Tenn. Chy., 704, it was said: ''The joinder of the two bills (bills of review and bills to impeach the decree for fraud), having such different objects and effects, is not in consonance with the practice of the Court, and would lead to grave confusion.''

See *Gordon* v. *Ross*, 63 Ala., 356, where the Court says: '' The same defenses cannot be made, the same matters are not open for consideration, the same relief cannot be granted. The object and effects of a bill of review and a bill impeaching a decree for fraud are essentially different. If entertained as a bill of review, the former decree so far as erroneous would be reversed, and the Court would proceed to retry the case, rendering the decree the evidence would authorize. But if fraud has infected the decree, it must be vacated entirely. There is no retrial of the case.

But, treating the bill in this case as properly filed for both purposes, we agree with the Chancellor in his findings on this subject, viz: '' I find nothing in the allegations of the bill, taken in connection with the exhibits, to support the charge of fraud in obtaining the decree confirming the compromise. The fraud preceded the compromise, and the compromise was rather in the nature of a rep-

aration. The Burnham bill contains all the allegations of fraud relied upon here, except that the Court was deceived as to the value of the Illinois property, and as to the fact that the Memphis property was leased, for $1,000 per annum, to a tenant who was to pay the taxes. This latter fact did not enter into the reason controlling the Court, and I think would not have made any change in the decision. I can see no evidence of bad faith on the part of the witnesses who testified as to the value of the Illinois property. Some of them gave rather a gloomy account of it. They do not testify like witnesses trying to deceive; and then the bill only alleges that the property was not worth more than $9,000, exclusive of improvements. This might be true, and yet the property be considered by the Court much more valuable to the minors than the Memphis property, valued at $31,000, subject to a life estate with twenty-one years' expectancy, and liable to over 5 per cent. taxes, whenever taxes should have to be paid. Property was declining, both in Memphis and in Loda, Ill.; there was no demand for real estate at either place. The contest in the proof was rather as to which property was least desirable. Besides, the bill does not show what became of this Illinois property, whether it has been sold, and if so, what was realized. In order to charge fraud in proof of value, the bill should be full, explicit, and candid.''

The newly discovered evidence alleged in the bill is the same that appeared in the consolidated causes, and the Court had knowledge of it when the compromise decree was rendered. It is not shown that any fraud was practiced in procuring the compromise decree, and that is the essential and indispensable condition of impeaching that decree for fraud. We, therefore, hold the bill as insufficient treated as a bill to impeach the decree for fraud, and in saying this we concede that as a bill to impeach the decree for fraud, this Court can look to the entire record of the consolidated causes, including all the proceedings and *proof*.

It is insisted, however, by counsel for complainants that the Court had not jurisdiction to make the compromise decree: "First, because the minors were not parties to any pleading or proceeding upon which said decree can rest, and were not represented by guardian *ad litem;* second, because even if the minors were parties, and were represented by guardian *ad litem*, the decree is not within the scope of the pleadings, and are, therefore, void; third, because there was no issue upon any pleading upon which said decree can rest, and without such issue the decree is *coram non judice;* fourth, because the case of *Jones* v. *Schaefer* ended with the dismissal of the case as to Jones, and, therefore, the compromise decree cannot be considered as having been made in that cause, for this as well as for other reasons here given; fifth, because the

Court had neither inherent nor statutory jurisdiction
to make said decree, as these proceedings then stood,
as to parties and pleadings; sixth, because even if
the Court had jurisdiction of the parties, and the
pleadings had been in all respects sufficient, the
Court had not the statutory or inherent jurisdiction
to decree an exchange of real properties; and, sev-
enth, because, even if the Court had jurisdiction to
decree an exchange of properties, real estate in Ten-
nessee for other real estate in this State, it had
not the jurisdiction to exchange real property in
this State for similar property situated in a *foreign
jurisdiction.*'' On this subject the Chancellor held,
viz. : '' While the question is one of great difficulty,
I am constrained to hold that this compromise de-
cree was not within the scope of the pleadings.''

Counsel for the defendants assign this holding of
the Chancellor as error.

It is not controverted that a decree, outside the
scope of the pleadings, is *coram non judice* and void.
*Bank* v. *Carpenter*, 13 Pick., 437; *Randolph* v.
*Bank*, 9 Lea, 63; *Rogers* v. *Breen*, 9 Heis., 679;
*Easley* v. *Tarkington*, 5 Bax., 592.

But it is contended this rule is not applicable in
the present case. It is argued, in the first place,
that, in the consolidated causes in which the com-
promise decree of 1874 was pronounced, the Court
had jurisdiction of the parties and subject-matter.
It is said further that the purpose of the bill filed
by Reuben Jones on September 11, 1871, was to

perfect Jones' title to these lots; that on April 15, 1873 (before Jones had filed his disclaimer), David Burnham and wife, in their own interest and as next friend for the minor remaindermen then *in esse* filed a cross-bill in this cause, seeking to set aside all the conveyances of this real estate and to recover its possession.    Again, that on May 21, 1873, David Burnham and wife, in their own right and as next friends to the minor remaindermen, preferred an original bill against Adam Smith, seeking to cancel the deeds to Jones, and from Jones to Smith, and to recover the lots in suit.    On February 19, 1874, the petition of David and Mary Burnham, for themselves and the minor remaindermen, was filed, setting out the proposed compromise.    The Court ordered that the petition stand as though filed in the case of David and Mary Burnham *v.* Adam Smith, and the guardian *ad litem* (Mr. T. B. Turley) was directed to defend and represent the minors in all matters involved in the two causes and in the petition referred to.    On motion of the guardian *ad litem*, the names of the minor remaindermen were stricken from the petition, and the petition stood in the name of David and Mary Burnham.    It appears, however, that the guardian *ad litem* continued to represent the minors, cross-examining the witnesses on the order of reference, and argued the report, contending, among other things, that, under the will the minors had a present estate in the land, and that Smith was not an innocent purchaser.

But it is insisted that, though the names of the minors were stricken from the petition proposing the compromise decree, they were before the Court in the two consolidated causes, and, hence, the Court had jurisdiction *in personam.* It is further insisted that the simple issue in the two consolidated causes was in respect of the validity of Smith's title, and who should recover the property in controversy, and it is submitted that, upon this pleading, the compromise decree might well be warranted.

. It is further insisted that the subject-matter, the Memphis property, was within the jurisdiction of the Court, and the parties were before the Court upon pleadings which put in issue the title to the property, and that any decree made by the Court settling the question of ownership is valid. It is said the fact that the Court found that other property (outside of the State) had been, or was to be, conveyed to the minor remaindermen does not affect the jurisdiction of the Court over the subject-matter in Tennessee.

The proposition of counsel, therefore, is, if the Court had jurisdiction of the parties and of the subject-matter upon pleadings which are appropriate, the compromise is good. It is well settled by this Court that infants are concluded to the same extent as adult parties by decree of the Chancery Court, and entitled to the same proceedings for the correction of errors therein, and to none others. *Hurt* v. *Long*, 6 Pick., 445.

It is said in the latter case, viz.: "Whether a particular decree could or should be rendered was not a jurisdictional question. The right to hear and determine which is jurisdictional, in the sense considered, is one thing; the decree to be rendered upon the evidence offered is another. If the jurisdiction exists, the decree might be erroneous upon the evidence, but not void. So, neither as to the pleadings nor effect of proof in the original cause, do minors stand on any different footing, when they seek to impeach it, than do other suitors." *Ib.*, 460.

Again: Since and before the Code, Chancery Courts "had the jurisdiction to control and sell and consent to the sale of real estate of a minor when it was to his interest." The rule has been uniformly stated that "wherever a Court of Chancery has jurisdiction of the subject-matter in litigation, and has jurisdiction of the parties, as to third persons, its proceedings cannot be held to be void, and in this it is not material whether the jurisdiction be inherent or statutory." *Hurt* v. *Long*, 6 Pickle, 446; *Kelley* v. *Kelley*, 15 Lea, 198; *Livingston* v. *Noe*, 1 Lea, 55; *Fulton* v. *Davidson*, 3 Heis., 614–641; *McGavock* v. *Bell*, 3 Cold., 512–518; *Hopper* v. *Fisher*, 2 Head, 252–256; *Winchester* v. *Winchester*, 1 Head, 500.

The children of Mrs. Burnham (Mary C. Knapp) were before the Court as defendants in *Jones* v.

*Schaefer et al.*, and were represented by Mr. Turley as their guardian *ad litem*. These children, with their mother, were also complainants in that cause. They were also parties complainant with their mother in the original bill against Adam Smith. In this cause the Chancellor did not hold that the children of Mrs. Burnham were not parties to the consolidated causes, or represented by guardian *ad litem*, but pronounced the decree void, solely upon the ground that it was outside of the pleadings.

It is conceded by the complainants that the Chancery Court has the inherent jurisdiction to sell the lands of minors or others under disability. *Hurt v. Long*, 6 Pickle. It is conceded, also, that the Chancery Court has the right to compromise the rights of minors in proper cases where they are parties. *Rucker* v. *Moon*, 1 Heis.; *Reynolds* v. *Brandon*, 3 Heis., 605.

In Daniells on Chy. Pl. and Pr., vol. 1, p. 67, the author says: "In consequence of their incapacity, persons under disability are unable to compromise their rights or claims; but where these rights and claims are merely equitable, the Courts of Chancery may, in general, order the trust property to be dealt with in whatever form it may consider to be for the benefit of the *cestui que trust*, who are under disability, and, therefore, *has power to compromise such rights or claims.*" Chancellor Cooper adds to this his note 1, citing: *Brooke* v.

*Lord Mostyn*, 2 De G. J. & S., 373–415 (S. C., 10 Jour. (N. S.), 1114–1116); *Wilton* v. *Hill*, 35 L. J. Chy., 156; *Wall* v. *Ròdgers*, 9 L. R., Eq., 58.

We are of opinion that the consolidated causes propounded an issue between the minors and Adam Smith, touching the title to the Memphis property, and the compromise decree of 1874, was within the purview of that litigation and the scope of the pleadings. The minors were parties to this cause, and were represented by *guardian ad litem.* It was not necessary that the compromise should have been presented by petition or any special pleading. Nor was it necessary that the *guardian ad litem* should have consented to the compromise. The compromise was made by the mother on her own behalf and as next friend of her children, and, after reference to the Master for the facts and his recommendation, the compromise was ratified by the Court.

The guardian *ad litem* did not except to the report or appeal from the decree of compromise. The record shows he fully developed the case, and faithfully and efficiently represented the interests of the minors.

It is insisted by complainants' counsel that jurisdiction to approve an offered compromise does not exist except upon the consent of guardian *ad litem*, next friend, and counsel. In support of this position, counsel cites *in re* Burchnell, 16 Chy. Div.

41, viz.: "That case involved personalty, and the Vice Chancellor suggested a compromise, to which the adults consented, but the guardian *ad litem* and counsel objected. Jessel, Master of Rolls, said, 'The Court can approve a compromise on behalf of the infants, but it cannot force one upon them against the opinion of their advisers.'"

The question was there made on the direct appeal of the minors from the decree of an inferior court ordering a settlement over the objections of the guardian *ad litem.* In the present case the decree was not appealed from, and shows upon its face that it was consented to by the next friend of the infants.

In our opinion the compromise decree of 1874 was, to all intents and purposes, a consent decree. The next friend has a right to consent to a settlement affecting the rights of the minors, and when his agreement is ratified and approved by the Court, it becomes binding upon the infant. In *Bigley* v. *Watson,* 14 Pick., 353, this Court recognized the rule that an adjudication of matters outside the pleadings, is *coram non judice,* but held that this rule does not extend to consent decrees rendered in causes where the Court had jurisdiction of the parties and of the subject-matter, citing *Pacific R. R.* v. *Ketchem,* 101 U. S., 289; *Railroad* v. *U. S.,* 113 U. S., 261; 5 Enc. Pl. & Pr., 962; *Boyce* v. *Stanton,* 15 Lea, 347.

It matters not, said the Court, that Mrs. Watson was a married woman at the time, for decrees by consent by persons under the disability of coverture or infancy are avoidable alone by original bill, and then only for good reasons shown, citing authorities. In *Tripp* v. *Gifford*, 155 Mass., 108, S. C., 31 Am. St. Rep., 530, the Court says, viz.: "We see no reason why the next friend should not have authority to institute or entertain negotiations for a settlement of the controversy. His position with reference to it is like that of a general guardian or a guardian *ad litem* of an infant defendant. The next friend is invested with the rights of the infant so far as they are involved in the cause and acts under responsibility both to the Court and to the plaintiff. It may well be considered to be within his official duty to negotiate, if possible, a fair adjustment without subjecting the plaintiff to the expense and risk of a trial."

It was held, however, in that case that the next friend had no right to compromise out of Court the right of the minor, but it was conceded that the next friend might, with the consent of the Court, bind the infant by a compromise of his rights. *Walsh* v. *Walsh*, 116 Mass., 377. This was a bill to review and reverse a decree compromising a minor's rights. Says Gray, C. J.: "In the case before us the first decree, appearing upon its face to have been made, not upon consent of defendants and guardian *ad litem merely*, but upon the repre-

sentation of counsel and adjudication of the Court that it was a decree fit and proper to be made against the infant, it must be held binding upon them.''

. Lastly, it is insisted that, conceding the Court had jurisdiction of the parties, and the pleadings were sufficient, the Court had not the inherent or statutory jurisdiction to decree an exchange of real estate, and more 'especially was it without jurisdiction to exchange real estate in Tennessee for similar property situated in a foreign jurisdiction (to wit, the State of Illinois). But. it has been seen that the subject-matter of the consolidated causes, and of the compromise decree, was property situated in Tennessee, and the fact that property in Illinois may have been accepted as a part of the consideration of the compromise did not affect the jurisdiction of the Court. It may have been an error for the Court to have sanctioned the exchange of the lands of the minors situated in Tennessee for lands situated in another State, but this was a matter which did not affect the jurisdiction of the Court, but went to the mode and manner of exercising that jurisdiction. The Court, in ratifying the compromise decree of 1874, had jurisdiction of the parties and of the subject-matter, and an erroneous exercise of the jurisdiction does not affect the validity of the decree.

The result is, the decree of the Chancellor is reversed, the demurrer sustained, and the bill dismissed.