AMANDA HODGES CARTER *et al. v.* NETA MAY CARTER *et al.*

(*Knoxville.*   September Term, 1921.)

1. **GUARDIAN AND WARD.** Evidence held to show exchange of property was to advantage of minors.

Evidence that property inherited by minors was a farm located away from their residence, which was deteriorating for want of attention, *held* to show that the exchange of the farm for city property of equal or greater value and producing a greater annual income was to the advantage of the minors, especially where the master and the chancellor both found such advantage, (*Post.* pp. 632-635.)

Case cited and distinguished: Arbuckle v. Arbuckle, 129 Tenn., 489.

Code cited and construed: Sec. 5078 (S.).

2. **INFANTS.** Chancery can approve sale of minors' property independently of statute.

The jurisdiction of the chancery court to approve the sale or exchange of the property of minors or other persons under disability does not depend upon Shannon's Code, section 5078, regulating proceedings therefor, but is inherent in the court and more comprehensive than the statute. (*Post, pp.* 635, 636.)

Cases cited and distinguished: Hurt v. Long, 90 Tenn., 445; Porter v. Porter, 60 Tenn., 301.

3. **GUARDIAN AND WARD.** Failure to allege other property of minors does not defeat jurisdiction to order sale.

The failure of bill by a guardian for the approval of an exchange of property of minors to specify the other property belonging to the minors, as required by Shannon's Code, section 5078, does not defeat the jurisdiction to approve an exchange, since the other property of the minors is merely a question of fact which appeals

Carter v. Carter.

to judgment of the court in determining whether the sale or exchange ought to be ratified. (*Post, pp.* 636, 637.)

Cases cited and approved: Wilson v. Schaefer, 107 Tenn., 330; Holt v. Hamlin, 120 Tenn., 523.

4. GUARDIAN AND WARD. Strict compliance with statutes regulating sales is not essential to jurisdiction.

Strict compliance with Shannon's Code, section 5078, prescribing the pleadings for the approval of a sale or exchange of property of a minor, is not essential to the jurisdiction of the court. (*Post, pp.* 637, 638.)

Case cited and distinguished: Greenlaw v. Greenlaw, 84 Tenn., 442.

Code cited and construed: Secs. 5078, 5085, (S.).

5. GUARDIAN AND WARD. Erroneous order of sale can be corrected, regardless of right to recover against purchaser.

An erroneous decree by the chancellor confirming a sale of property of minors may be corrected on writ of error by the next friend of the minors, regardless of whether the rights of the purchaser under the decree will be thereby affected. (*Post, pp.* 638, 639.)

6. GUARDIAN AND WARD. Omission of description of other property held not prejudicial to minors.

In a suit for the confirmation of the exchange of property belonging to minors, where the bill alleged generally that the minors owned other property in another county which they had inherited from their father, and the evidence showed what that property consisted of, the failure of the bill to describe the other property specifically was not prejudicial to the minors and does not require reversal of the decree and confirmation. (*Post, pp.* 638, 639.)

7. GUARDIAN AND WARD. Answer to original bill may be considered answer to amended bill.

The failure to have filed an answer on behalf of minors to an amended bill for the confirmation of exchange of property was a matter of procedure over which the chancellor, acting as guardian of minors, had complete control, and the court's confirmation of

the exchange will not be reversed for such failure where the minors answered the original bill, into which the amendments' were incorporated under the chancery practice, were represented by guardian *ad litem,* and their best interests were conserved by the decree. (*Post,* p. 639.)

FROM SULLIVAN.

Appeal from the Chancery Court of Sullivan County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. Hal H. Haynes, Chancellor.

E. K. Bachman, for appellants.

Harr & Burrow, for appellees.

Mr. L. D. Smith, Special Justice, delivered the opinion of the Court.

The complainant Amanda Hodges Carter and her children were the owners as legatees under the will of one McBee of a farm of about two hundred acres in Jefferson county, near Straw Plains; Amanda having a life estate and her children the remainder. She filed the bill in this cause alleging the ownership of the land as above stated. Some of her children, for whom she is the legal guardian, were minors, and they were made defendants to the bill. She sought by the bill to have confirmed by the chancery court an exchange of the farm for some property in Bristol, Va., which she had negotiated with the defendant Millard, alleging facts which showed that it was manifestly to the interest and ad-

Carter v. Carter.

vantage of her minor children, that the exchange be carried out. Her son and daughter who were *sui juris* joined in the bill with her. The bill was filed March 31, 1915.

The question of the advisability of ratifying the exchange and collateral matters were referred by the chancellor to the master, with directions to take proof and report. The master reported upon the evidence that it was manifestly to the advantage of the minors that the exchange be ratified, and the chancellor confirmed his report, and directed the confirmation and delivery of the deeds which had been executed to complete the transfer of the title. Final decree was rendered December 20, 1915. There was no appeal from this decree. On May 13, 1919 (about three and one-half years after the entry of the decree), the transcript with petition for writ of error to have the decree reviewed, and reversed was filed in the court of civil appeals by a next friend of the minors.

The action of that court in sustaining the writ of error, reversing the decree of the chancellor, and dismissing the bill, is now before this court upon *certiorari* issued upon the petition of the defendant Millard.

The court of civil appeals found and held that the chancellor's decree was erroneous and should be reversed for the following reasons:

First. That the evidence failed to show that the exchange of the property was for the manifest interest and advantage of the minors and did not justify ratification thereof.

Second. That the bill did not contain the recitations required by the act regulating such proceedings (Shan-

non's Code, section 5078) to confer jurisdiction upon the court.

Third.   That there was no answer filed by the defendants to the amended bill which showed that an allegation in the original bill, to the effect that $1,750 in addition to the Bristol property was to be given for the Straw Plains farm, was a mistake, and that the real agreement was an even exchange of the properties.

These are the questions for decision, which we will, notice in the order stated:

Four disinterested witnesses were examined, three of whom were real estate men of Bristol, shown to be well acquainted with the Bristol property, to-wit:   M. D. Andes, J. M. Barker, and H. H. Galloway.   They all show that the property was worth at least $10,000.   The other witness, D. H. Wood, was not well informed as to the Bristol property, but he was well qualified to judge of the value of the Straw Plains farm, having lived and owned property near it for several years.   His testimony shows that the farm was worth from $8,000 to $10,000.   It was shown that the farm was yielding a net income of about $150 per year, while the Bristol property was yielding $600 per year.   The farm property was deteriorating in value for lack of proper attention, while the Bristol property was increasing in value.   It was further shown that Mrs. Carter and her children who lived with her, and whom she had to support and educate, lived at Bristol, Va., more than one hundred miles from the farm; that she had her home and other property at Bristol; that her oldest son and married daughter lived there, and were engaged in business there;

that Mrs. Carter was forty-four years old, in bad health, and a widow, her husband having died some years previously; that the minors were young and small and dependent upon the mother for support and education.

It was quite manifest from this evidence that it was to the advantage of the minors to make this exchange of property. There was practically no evidence to the contrary. The daughter in her testimony said she did not believe it was a good investment, and one of the real estate men expressed some doubt as to whether or not the Bristol property was a good investment at $10,000.

Upon this evidence the master reported that the exchange was manifestly to the advantage of the minors. The chancellor concurred in his report and confirmed it. Besides the effect of this concurrent finding, to which the Court of Civil Appeals makes no reference, the evidence establishes the proposition beyond any reasonable doubt.

The next question is whether the bill contains sufficient allegations to give the court jurisdiction. The only complaint is that the pleadings did not set forth fully and particularly "what other property" the minor defendants "owns or is in any way entitled to."

The article of the Code on the sale of property of persons under disability, after providing that a court of chancery may on behalf of persons under disability consent to a decree and sale of the property of such persons, provides (Shannon's Code, section 5078) as follows:

"In all cases, the pleadings shall set forth fully and particularly the age, circumstances, and condition of the

party under disability; what other property, if any, such person owns, or is in any way entitled to, and the cause or reason why a sale of the particular property is sought; and such pleadings shall be sworn to.''

Certainly the bill is full as to all other requirements of the statute. It is particularly shown what were the ages, circumstances, and condition of the minors and the causes and reasons why a sale of the particular property was sought. All that was alleged showed good cause and reason for the sale. The bill did not show with particularity what other property they owned, but it did show that they owned other property in Sullivan county, Tenn., left them by their father, J. M. Carter.

The position taken by the court of civil appeals is that the chancery court was without power and authority to adjudicate a ratification of this sale unless the pleadings set out each and every piece of property which the minors owned or had an interest in. The only authority relied upon to sustain this contention is *Arbuckle* v. *Arbuckle,* 129 Tenn., 489, 167 S. W., 111. In that case the sale was sought to be avoided because the purchaser had testified as a witness in the case, under the provisions of section 5088, which provides that no witness shall purchase at such sale, and if he does the sale shall become void, and the infant may bring ejectment for the land as if no sale had been made. In discussing this question the court said, incidentally:

''The jurisdictional facts and those which must control the discretion of the court are set out in section 5078, . . . and relate to the age of the minor, his circumstances in life, and his condition, whatever prop-

erty he owns or is entitled to, and the cause or reason why sale of the particular property is sought.''

The court did not have under consideration the question here presented. The words ''jurisdictional facts'' were used in connection with the words ''those which must control the discretion of the court.'' The court did not mean to hold that the chancery court would not have jurisdiction to ratify the sale of a minor's property where sufficient facts were alleged to show that it was to the minor's advantage, merely because the pleadings did not itemize other property belonging to the minors.

It has been repeatedly held that the jurisdiction of the chancery court does not depend upon this statute, but that the jurisdiction is inherent, and even more comprehensive than the statute. In *Hurt* v. *Long,* 90 Tenn., 445, 16 S. W., 968, this court, in an opinion by Mr. Justice SNODGRASS, reviewed the authorities upon this question. In that case it was contended that the court was without jurisdiction and the sale was void, because not brought by the husband or regular guardian of the minor, as was required by section 5073 of the Code.

The court said in that case:

''The act of 1827 [which is the act upon which the Code section is based], while enumerating chancery courts . . . among others which might exercise such jurisdiction, added nothing to the jurisdiction of that court, which, before and since, and before and since Code provisions referred to, had the jurisdiction to control and sell and to consent to the sale of the real estate of a minor where it was to his interest.''

The case of *Porter* v. *Porter*, 1 Baxt., 301, was cited as holding that the chancery court by virtue of its inherent power might in a proper case decree a sale contrary to the provisions of the statute.

The court further said:

"The disability which the law imposes upon a minor is for his benefit and not for his injury. When, therefore, his incapacity to dispose of his estate would result injuriously, a court of equity will make or confirm a disposition of it."

Whether the minors had other property, and what it was, was a question which appealed to the judgment of the court in determining whether the sale ought to be ratified. As was said in *Hurt* v. *Long, supra:*

"Whether a particular decree could or should be rendered was not a jurisdictional question. The right to hear and determine, which is jurisdiction in the sense considered, is one thing; the decree to be rendered upon evidence offered is another. If the jurisdiction exists, the decree might be erroneous upon the evidence, but not void. So, neither as to pleadings nor effect of proof in the original case, do minors stand on any different footing, when they seek to impeach it, than other suitors."

The reason for the rule stated is given in the opinion of Judge SNODGRASS, wherein he says:

"A different doctrine would be a very dangerous one indeed, and of infinite trouble, for it would authorize every court, and impose upon every court, the duty of repassing on the facts and law of every case in which a minor had been involved, where he impeached it as erroneously decided; and, worse than this, the second

Carter v. Carter.

decree in the case brought by a minor to impeach the first would have no more sanctity than that impeached. He might file a bill to have this again tried as erroneous, and, failing in this, to review the third, and so on until his minority terminated. Besides, no title would be secure in any case derived through a sale in which a minor was a party; for, even in case of innocent purchaser, that is a defense to be both pleaded and proven, and minority often lasts until purchaser and witnesses to prove it are dead and such evidence lost.

"In any and all aspects it is a doctrine rejected by the good sense of the profession, and wholly unnecessary, ruinous, and inapplicable under our system of law, broad and wise as it is in the preservation of other full and adequate remedies for all the wrongs and enforcement of all the rights of minors."

To the same effect are the cases of *Wilson* v. *Schaefer,* 107 Tenn., 330, 64 S. W., 208, and *Holt* v. *Hamlin,* 120 Tenn., 523, 111 S. W., 241.

That strict compliance with the provisions of the statute is not essential to jurisdiction of the court is settled by *Greenlaw* v. *Greenlaw,* 84 Tenn. (16 Lea), 442. That was a case in which the sale was attacked by the purchaser after he had complied with the terms of the sale and before confirmation of the report of the master. He said the sale was void because the bill was not filed by the regular guardian of the infant; that the bill did not state what other property the infants owned, and other objections. The court said that while the bill should have been filed by the husband against the wife, and by a general guardian of the infants against

them, and that the bill or answer should have set forth, in accordance with the Code, fully and particularly the age, circumstances, and condition of the parties under disability, and what other property, if any, they owned or were in any way entitled to, and that his honor the chancellor should have seen that these requirements were complied with, that nevertheless—"In the attitude in which the case comes before us, which is equivalent to a collateral and not a direct attack upon the proceedings, the question is whether the court had such jurisdiction of the parties and the subject-matter as to render the proceedings valid as against a collateral attack, although it may be erroneous upon a direct appeal. . . . The court undoubtedly had jurisdiction of the parties and the subject-matter. Under these circumstances, and especially in view of the Code, section 3336 [Shannon, 5085], which seems to have been intended to protect purchasers from the failure of the counsel and the court to follow the provisions of the statute strictly, we think the appellant acquired a good title, which cannot be affected by any proceeding taken hereafter by the parties for the correction of errors."

How a reversal of the chancellor's action may affect the purchaser is not a matter about which the court is now and here concerned. If there is error, the petitioners are entitled to have that corrected, whether it will avail them anything or not. But this court will not reverse merely because there was a failure in the bill to aver with particularity all the facts required by the statute, if the court had jurisdiction of the subject-matter and of the parties, and pronounced a righteous decree, having

before him the evidence of all the facts required to be produced by the statute. In this case, while the bill itself did not specify every piece of property in which the minors were interested, the allegation to the effect that they owned other property in Sullivan county which they had inherited from their father was sufficient to authorize the court to act with respect to the particular property. Answer was filed and the evidence showed practically each piece of property that the minors owned. This was certainly sufficient to confer the jurisdiction or the power to act, and since we have concluded that he acted wisely upon the evidence, we cannot set aside his decree for want of jurisdiction, since all the averments of the bill clearly conferred the jurisdiction inherent in that court.

It is next insisted that the court's action was erroneous because no answer was filed to the amended bill by or on behalf of the minors. This was a matter of proced ure over which the court, acting as the guardian of the minors, had complete control. They had filed an answer to the original bill, and under the chancery practice in this State, all amendments incorporate themselves into the original, and such an answer makes a proper issue, and the court's action will not be reversed on this account, especially where it appears that the minors did answer the original bill, were represented by guardian *ad litem*, and their best interests conserved by the decree of the chancellor.

Therefore the decree of the court of civil appeals is reversed, and the decree of the chancellor in all things affirmed.